**ORIGINAL**

PROSKAUER ROSE LLP
John P. Barry
Mark A. Saloman
One Newark Center, 18th Floor
Newark, New Jersey 07102-5211
973.274.3200
973.274.3299 (fax)
jbarry@proskauer.com
msaloman@proskauer.com
*Attorneys for Violin Memory, Inc.*

Clifford L. Davis
202 Mamaroneck Avenue
Third Floor
White Plains, New York, 10601
914.761.1003
914.997.6529 (fax)
cdavis@clifforddavis.com
*Attorney for Krypton Consultants, Inc.*



CLERK'S OFFICE
DISTRICT COURT E.D.N.Y.

★ MAR 0 4 2010 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| VIOLIN MEMORY, INC. AND KRYPTON CONSULTANTS, INC., | CV 10 - 0978 |
| Plaintiffs, | **COMPLAINT – ECF FILED** |
| -AGAINST- | **JURY TRIAL DEMANDED** |
| FUSION MULTISYSTEMS d/b/a FUSION-IO, | SPATT, J. |
| Defendant. | TOMLINSON, M.J. |

Violin Memory, Inc. ("Violin") and Krypton Consultants, Inc. ("Krypton") bring this action against Fusion Multisystems, Inc., d/b/a Fusion-io ("Fusion") for: (i) tortious interference with contractual relations; (ii) tortious interference with business relations; and (iii) conversion

relating to an agreement to transfer intellectual property that Violin and Krypton entered into with third parties, whereby the third parties would transfer (and began to transfer) intellectual property to Krypton (and ultimately to Violin) (hereinafter the "Agreement").

## **INTRODUCTION**

1.      Violin and Krypton seek to remedy Fusion's tortious interference with their valid, binding, and enforceable Agreement with Inaura, Inc. ("Inaura") and the principals and/or board members of Inaura—Mike Anderer ("Anderer"), Rodney Rasmussen ("Rasmussen"), and Peter Bookman ("Bookman").

2.      The genesis of the Agreement stemmed from Fusion's misappropriation of Inaura's intellectual property. More specifically, Fusion stole Inaura's intellectual property and then improperly and illegally used it in Fusion's products.

3.      Unhappy with Fusion's refusal to end its unlawful conduct or fairly and properly compensate Inaura for its intellectual property, Inaura, Anderer, Rasmussen, and Bookman (collectively, the "Transferors") entered into the Agreement with Violin and Krypton whereby (i) Inaura agreed to sell its intellectual property to Krypton and, in turn, to Violin: (ii) Krypton agreed to commence litigation against Fusion seeking damages for Fusion's illegal use of Inaura's intellectual property and (iii) Violin agreed to compensate Inaura for its intellectual property.

4.      After learning of this binding Agreement, Fusion first sought to halt the implementation of the transaction through the courts. It later changed course and decided to engage in "self-help" by (once again), in effect, stealing Inaura's intellectual property. This time,

2

Fusion convinced Inaura and the other signatories to the Agreement with Violin and Krypton to renege on their legally enforceable commitments.

5. Fusion's underhanded actions demonstrate its culpability in using Inaura's intellectual property without permission. Indeed, Fusion's eleventh-hour stratagem to interfere with the legally binding Agreement to transfer Inaura's intellectual property demonstrates the lengths Fusion will go to in an attempt to cover up its misdeeds.

## **PARTIES**

6. Violin is a Delaware corporation with its principal place of business at 33 Wood Avenue South, Third Floor, Iselin, New Jersey.

7. Krypton is a New York corporation with its principal place of business at 110 Prospect Park West, Brooklyn, New York.

8. Upon information and belief, Fusion is a Nevada corporation with its principal place of business at 6350 South 300 East 6th Floor, Salt Lake City, Utah.

## **JURISDICTION AND VENUE**

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), in that the amount in controversy exceeds $75,000 exclusive of interests and costs and there is complete diversity of citizenship between the Plaintiffs and the Defendant.

10. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because Krypton is a New York corporation and its principal place of business is situated in Brooklyn, New York. In addition, a substantial part of the events giving rise to the claims occurred in Brooklyn, New York.

## BACKGROUND

11.     Violin was founded in 2005. Violin created a new product category that significantly improves computing performance when processing large amounts of data. Violin's memory appliances support between four and eight terabytes of memory in various platforms, providing high performance and scalability at a reasonable price. Violin's founders developed the memory technology upon which Violin products are based.

12.     Upon information and belief, Fusion is a computer company founded in 2007. Upon information and belief, Fusion develops solid state storage products for use in computer servers and high-end personal computers.

13.     On or about May 12, 2009, Violin and Krypton began negotiating with the Transferors to enter into an Agreement to, among other things, transfer certain intellectual property to Krypton (and ultimately to Violin).

14.     The Agreement contemplated Krypton filing a legal action against Fusion on various claims related to Fusion's unauthorized use and misappropriation of Inaura's intellectual property.

15.     The Agreement recites specific consideration – $2 million in cash and stock plus 33% of any additional cash or equity recovered from a lawsuit against Fusion.

16.     The discussions among Violin, Krypton, and the Transferors spanned several months. Although the Transferors initially negotiated directly with Violin and Krypton, they eventually retained an attorney, David Griffin, Esq. of the law firm of Workman Nydegger. Attorney Griffin also negotiated the Agreement on behalf of the Transferors.

17. Krypton negotiated the Agreement from and in Brooklyn, New York. All communications from the Transferors were sent to Krypton in Brooklyn, New York.

18. The Agreement's arbitration clause mandates that arbitration take place in King's County, New York and that New York law should apply to that proceeding.

19. In Section 3.3 of the Agreement, each of the Transferors "represents and warrants" that the Agreement "constitutes a valid, legal binding agreement."

20. The Agreement states that the "Transferors represent and warrant that they believe that Rick Charles White, David A. Flynn, and [Fusion] have misappropriated the intellectual property [that is the subject of the Agreement] from them and are using it in current Fusion products."

21. The Agreement specifies that the parties are the Transferors, Violin, and Krypton; specifies the exact intellectual property to be transferred (in Section 3.1 and in the attached spreadsheet); specifies consideration for the intellectual property to be transferred; describes the terms of intellectual property licenses between Krypton and Violin; and states that Krypton will file unnamed claims against Fusion relating to Fusion's misappropriation of the transferred intellectual property.

22. Section 3.1 of the Agreement requires the Transferors, as of the Effective Date of the Agreement, to transfer all of the intellectual property described therein.

23. Throughout the negotiations concerning the Agreement, the Transferors repeatedly informed Violin and Krypton that Fusion was attempting to interfere with the deal.

24. According to a December 21, 2009 e-mail from Rasmussen to Donald Basile, the Transferors wanted a "binding" Agreement "to stop the Fusion pressure."

25. The Agreement was ultimately executed on or about January 23, 2010 (the "Effective Date" of the Agreement). Krypton executed the Agreement in Brooklyn, New York.

26. Almost immediately upon the execution of the Agreement, the Transferors began to take steps to fulfill their legal obligations.

27. On or about January 28, 2010, the Transferors informed Violin and Krypton that they were beginning to collect chain of title documents for the intellectual property that was the subject of the Agreement, as well as various other documents Violin and Krypton had requested.

28. Attorney Griffin contacted Violin and Krypton, on the Transferors' behalf, to begin the transfer of intellectual property.

29. On February 1, and again on February 7, 2010, Attorney Griffin sent Krypton and Violin some (but not all) of the intellectual property specifically identified in the Agreement.

30. Fusion, however, had other plans. On January 28, 2010, it filed a lawsuit in the Third Judicial District Court, sitting in Salt Lake County, Utah (case number 100901551) against, among others, Violin, Christopher Basile (the principal of Krypton), Inaura, Rasmussen, and Anderer (but, curiously, not Bookman who, on information and belief, now works for Fusion).

31. In its Complaint, Fusion alleges that Violin and Donald Basile were trying to purchase Inaura's intellectual property to "harass Fusion, spread falsehoods in the marketplace, and initiate groundless litigation."

32. As a result, Fusion sought to prevent Christopher Basile from "carry[ing] out [Donald Basile's] bidding" to enter into an agreement with Inaura and Rasmussen to obtain Inaura's intellectual property.

6

33. The Complaint purports to identify some of the terms of the Agreement, namely payment of $1 million in cash and Violin stock to Inaura in exchange for certain intellectual property. Fusion improperly learned the specific terms of the Agreement, which all parties agreed was supposed to be confidential.

34. Fusion alleges in its Complaint that the Agreement is binding.

35. In its Seventh and Eighth Claims for Relief in its Complaint, Fusion sought a declaratory judgment that the "contract entered into between Chris Basile and/or his affiliate, Violin, and Inaura for the purchase of Inaura's intellectual property rights is null and void." Fusion also sought injunctive relief to enjoin "[a]ll defendants . . . from assisting or participating with Chris Basile or his affiliates in any post-closing transfer of the intellectual property rights of Inaura."

36. On February 19, 2010 – about three weeks after it filed its Complaint, Fusion filed an Amended Complaint. Unlike the original Complaint, the Amended Complaint does not name Inaura or Rasmussen as Defendants nor seek declaratory or injunctive relief to prevent the transfer of Inaura's intellectual property to Christopher Basile, Violin, or anyone else.

37. Contrary to its allegations in the original Complaint, Fusion's Amended Complaint characterizes the Agreement as not legally binding.

38. The Amended Complaint also makes clear why Fusion dropped its request to prevent the transfer of Inaura's intellectual property: Fusion engaged in "self help."

39. According to the Amended Complaint, "Fusion reached an agreement in which Inaura transferred certain intellectual property assets to Fusion in exchange for a payment of a confidential amount of money that is substantial."

40. Upon information and belief, Fusion and the Transferors entered into this purported arrangement subsequent to the execution of the Agreement.

41. On or about February 22, 2010, the other shoe dropped. Having heard nothing from the Transferors since the February 7, 2010 second-round transfer of intellectual property, Christopher Basile and Donald Basile received a purported "Notice of Termination" from the Transferors. The "Notice of Termination" stated that the Transferors "hereby give notice of termination, effective immediately" of the Agreement.

42. According to the Transferors, "we have come to the conclusion that such Agreement is not legally binding under its governing law and, thus, we cannot proceed under its terms."

43. The Agreement does not provide for any mechanism for any party to terminate it unilaterally.

44. Krypton received the "Notice of Termination" from the Transferors in Brooklyn, New York.

45. Although not exact, the Transferors purported theory of why the Agreement is not legally binding is strikingly similar to the one that Fusion proffered days before in its Amended Complaint.

46. Upon information and belief, Fusion has entered into "partnerships" relating to products that use Inaura's misappropriated intellectual property – which rightfully belongs to Krypton (and ultimately to Violin) – including with companies within (or within 100 miles of) this judicial district.

47. Upon information and belief, one such "partnership" is between Fusion and IBM, which, upon information and belief, is headquartered in Armonk, New York.

48. Armonk, New York is located less than 100 miles from this judicial district.

49. Upon information and belief, Fusion received approval for the purported "substantial" payment to Inaura from its Board of Directors, all of whom, upon information and belief, had knowledge of the Agreement.

50. Violin and Krypton intend to take discovery concerning the extent of the participation of the members of Fusion's Board of Directors in this matter and will, if appropriate, amend this Complaint, to include, among others, Fusion Board members as individually-named defendants.

51. In addition to filing this Complaint, Violin and Krypton have, in accordance with the arbitration provision in the Agreement, filed a claim for Arbitration against the Transferors with the American Arbitration Association.

## COUNT I
**(Tortious Interference With Contractual Relations)**

52. Plaintiffs incorporate and reallege paragraphs 1-51, above, as if fully set forth herein.

53. The January 23, 2010 Agreement by and between Violin, Krypton, Inaura, Anderer, Rasmussen, and Bookman constitutes a valid, binding, and enforceable contract.

54. Fusion knew, or should have known, of the existence of the Agreement and the obligations of Inaura, Anderer, Rasmussen, and Bookman.

9

55. Fusion induced Inaura, Anderer, Rasmussen, and Bookman to breach the Agreement and to transfer Inaura's intellectual property to Fusion, such that Inaura, Anderer, Rasmussen, and Bookman's performance under the Agreement is now impossible.

56. Violin and Krypton have been damaged by Fusion's conduct.

## COUNT II
### (Tortious Interference With Business Relations)

57. Plaintiffs incorporate and reallege paragraphs 1-56, above, as if fully set forth herein.

58. To the extent that the Agreement is found to be not valid, binding, and enforceable, it constitutes a business relationship and an agreement to enter into a future agreement to transfer Inaura's intellectual property to Krypton and for the benefit of Violin.

59. Fusion knew, or should have known, of the existence of the Agreement and the obligations of Inaura, Anderer, Rasmussen, and Bookman.

60. But for the malicious actions of Fusion, Inaura, Anderer, Rasmussen, and Bookman would have entered into a final agreement with Violin and Krypton to transfer Inaura's intellectual property to Krypton and for the benefit of Violin.

61. Violin and Krypton have been damaged by Fusion's conduct.

## COUNT III
### (Conversion)

62. Plaintiffs incorporate and reallege paragraphs 1-61, above, as if fully set forth herein.

63. Pursuant to the Agreement, Krypton (and ultimately Violin) is, or should be, the valid owner of all of Inaura's intellectual property that is described in the Agreement.

64. Through its intentional and wrongful conduct, Fusion has assumed control and/or ownership, or intends to assume control and/or ownership, of all of Inaura's intellectual property described in the Agreement.

65. Violin and Krypton have been damaged by Fusion's conduct.

**WHEREFORE**, by virtue of the foregoing acts complained of in Counts I, II, and III Violin and Krypton demand judgment in their favor and against the Defendant for (i) injunctive relief; (ii) return of any and all Inaura intellectual property identified in the Agreement that was transferred to Fusion; (iii) compensatory damages in an amount to be determined at trial; (v) attorneys' fees and costs; and (vi) such other relief as the Court deems appropriate.

### JURY DEMAND

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Violin and Krypton hereby demand a trial by jury on all issues so triable.

Dated: March 3, 2010                    Respectfully submitted,

                                        PROSKAUER ROSE LLP
                                        *Attorneys for Violin Memory, Inc.*

                                        By: _____
                                            John P. Barry, Esq.

                                        Mark A. Saloman, Esq.
                                        One Newark Center
                                        18th Floor
                                        Newark, New Jersey 07102-5211
                                        (973) 274-3200
                                        (973) 274-3299 (Fax)
                                        jbarry@proskauer.com
                                        msaloman@proskauer.com

11

Joseph A. Capraro, Jr., Esq. (*pro hac vice* application forthcoming)
Benjamin M. Stern, Esq. (*pro hac vice* application forthcoming)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9600
(617) 536-9899
jcapraro@proskauer.com
bstern@proskauer.com


CLIFFORD L. DAVIS, ESQ.
*Attorneys for Krypton Consultants, Inc.*

By: _____
    Clifford L. Davis, Esq.

202 Mamaroneck Avenue
Third Floor
White Plains, New York, 10601
914.761.1003
914.997.6529 (fax)
cdavis@clifforddavis.com

Christopher Basile, Esq. (application for admission forthcoming)
110 Prospect Park West
Brooklyn, New York 11215
(347) 581 9014
cmbasile@yahoo.com